# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

—o0o—

| | |
|---|---|
| BARON LEON WELCH, | ) 1:05-CV-00251 AWI JMD (HC) |
| Petitioner, | ) FINDINGS AND RECOMMENDATION |
| v. | ) REGARDING PETITION FOR WRIT OF |
| | ) HABEAS CORPUS |
| BRAD ESPINOSA, Warden, | ) |
| Respondent. | ) |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This action has been referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72-302.

PROCEDURAL HISTORY

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Tulare, Case Number F-2-55101-1.

On May 30, 2003, following a jury trial, Petitioner was found guilty of assault with a deadly weapon or by force likely to produce great bodily injury in violation of California Penal

1

Code section 245, subdivision (a)(1). The jury also found true the special allegation that appellant personally inflicted great bodily injury on the victim, subjecting Petitioner to enhanced punishment pursuant to California Penal Code section 12022.7, subdivision (a). Petitioner was sentenced to six years in state prison.

Petitioner timely appealed to the California Court of Appeal, Fifth Appellate District (hereinafter "Fifth DCA"). On September 16, 2004, the Fifth DCA affirmed Petitioner's conviction and sentence.

Petitioner timely petitioned the California Supreme Court for review. Review was denied on December 1, 2004.

On February 22, 2005, Petitioner filed a Petition for Writ of Habeas Corpus in this Court. On May 12, 2005, Petitioner filed an Amended Petition. On March 29, 2006, Respondent filed an Answer to the Amended Petition. On June 28, 2006 Petitioner filed a Traverse to Respondent's Answer.

**FACTUAL BACKGROUND**

The Court adopts the facts as recited by the Fifth DCA in its opinion dated September 16, 2004:

> As Donny Walker and his wife left a bar in Tulare, Baron Leon Welch made a rude sexual comment to her. On the theory that "it happens, you know, you just blow it off," she kept walking. Walker, however, demanded that Welch show her "a little respect." Welch replied, "don't blame me fore your insecurities." Walker said, "come on, dude," took off his shirt, pushed Welch, and told him to get into his "piece-of-crap" car and leave. Welch stabbed Walker in the face with a knife. Walker fell to the ground bleeding profusely.
>
> The police arrested Welch as he ran away from the bar with a knife in his hand. He had a laceration on the palm of his hand. Blood was on his hand and on the knife in his hand. DNA testing and statistical analysis showed that Welch and Walker were likely contributors to the blood on the knife.

**DISCUSSION**

I.  **Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn. 7 (2000). Petitioner asserts that he suffered violations of his rights as

cd

2

1  guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the
2  Fresno County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. §
3  2254(a); 2241(d).  Accordingly the Court has jurisdiction over this action.
4      On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act
5  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its
6  enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied*, 522 U.S. 1008 (1997); Jeffries
7  v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th
8  Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,
9  521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after its enactment).  The
10 instant petition was filed after the enactment of the AEDPA and is therefore governed by its
11 provisions.
12 II.  **Standard of Review**
13     This Court may entertain a petition for writ of habeas corpus "in behalf of a person in
14 custody pursuant to the judgment of a state court only on the ground that he is in custody in
15 violation of the Constitution or laws or treaties of the United States."  28 U.S.C . § 2254(a).
16     The instant petition is reviewed under the provisions of the AEDPA.  Lockyer v.
17 Andrade, 538 U.S. 63, 70 (2003).  Under the AEDPA, a petition for habeas corpus will not be
18 granted unless the adjudication in question "resulted in a decision that was contrary to, or
19 involved an unreasonable application of, clearly established Federal law, as determined by the
20 Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable
21 determination of the facts in light of the evidence presented in the State Court proceeding."  28
22 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.
23     As a threshold matter, this Court must "first decide what constitutes 'clearly established
24 Federal law, as determined by the Supreme Court of the United States.'"  Lockyer, 538 U.S. at
25 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining "clearly established Federal law," the Court
26 looks to the "holdings, as opposed to the dicta, of [Supreme Court] decisions as of the time of the
27 relevant state-court decision."  Id., *quoting* Williams, 592 U.S. at 412.  "In other words, 'clearly
28 established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth

by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

This Court may not issue the writ simply because in its independent judgment the state court decision applied clearly established federal law erroneously or incorrectly; for a writ to issue, 'that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, ninth circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. DuCharme, 200 F.3d 597, 600-01 (9th cir. 1999).

AEDPA requires that this court give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). Moreover, we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

III. **Review of Petitioner's Claims**

In his two grounds for relief, Petitioner claims the trial court violated his right to a jury

trial and reduced the prosecution's burden of proof by failing to instruct the jury to find an element of the sentencing enhancement. (Petition at 3, 6). A sentencing enhancement for the personal infliction of great bodily injury was submitted to the jury. Petitioner contends the trial court erred in failing to have a jury find beyond a reasonable doubt that the victim was not an accomplice, and that the Fifth DCA erred in finding the omission harmless.

### A.     Factual Background

In addition to being charged with a violation of California Penal Code section 245(a)(1) (assault with a deadly weapon), the prosecution alleged that Petitioner personally inflicted great bodily injury on the victim, subjecting him to enhanced punishment under Cal. Pen. Code § 12022.7(a).

The enhancement statute states: "Any person who personally inflicts great bodily injury on another person *other than an accomplice* in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." Cal. Pen. Code § 12022.7(a) (emphasis added).

When instructing the jury, the trial court struck the "not an accomplice to the crime" language from standard jury instruction CALJIC NO. 17.20, and instructed the jury as follows:

> "It is alleged in Count Two that in the commission of a felony, the defendant personally inflicted great bodily injury on Donny Walker. If you find defendant guilty of assault with a deadly weapon or by means of force likely to commit great bodily injury,...a felony, you must determine whether that defendant personally inflicted great bodily injury on Donny Walker ~~not an accomplice to the crime~~ in the commission of Count Two."

> "'Great bodily injury' as used in this instruction means a significant or substantial physical injury. Minor, trivial, or moderate injuries do not constitute great bodily injury. The People have the burden of proving the truth of this allegation. If you have a reasonable doubt it is true, you must find it to be not true. Include a special finding on that instruction in your verdict using the form that will be supplied for that purpose."

Fifth DCA Op. At 2; RT 308; CT 129.

### B.     State Court Review

Petitioner's claims were first presented on direct appeal to the Fifth DCA. The Fifth DCA denied Petitioner's claim on September 16, 2004, in a reasoned opinion. The claim was then presented to the California Supreme Court in a petition for review, which summarily denied

the petition on December 1, 2004.  The California Supreme Court, by its "silent order" denying review of the Fifth DCA's decision, is presumed to have denied the claims presented for the same reasons stated in the opinion of the Fifth DCA.  Y1st v. Nunnemaker, 501 U.S. 797, 803 (1991).

The Fifth DCA found that the exclusion of accomplice language in the challenged jury instruction constituted federal constitutional error.  (Fifth DCA Op. At 3).  Having so found, the state appellate court went on to determine whether the error was harmless beyond a reasonable doubt under the standard articulated in Chapman v. California, 386 U.S. at 24.  (Id.).  The Fifth DCA found the omission of the accomplice language to be harmless error under this standard.

Petitioner argued that the victim was an accomplice because he committed the offenses of disturbing the peace and simple assault by engaging in the confrontation with Petitioner and was therefore an accomplice in any reasonably foreseeable offense committed as a consequence, or to any offense he intended to facilitate or encourage. (Fifth DCA Op. At 3-4).  The Fifth DCA found that the record did not support "the incredible notion that Walker [the victim] 'intended to facilitate or encourage' the slashing of his own face by Welch."  (Id. at 4).  The state appellate court further rejected the argument that the victim should have reasonably foreseen that his face would be slashed with a knife by virtue of arguing with Petitioner.  (Id.; RT at 61, 108, 187). The Fifth DCA found "no support in the evidence" for a jury finding that the victim was an accomplice.  (Id. at 5).  Therefore it found the omission of the accomplice language from the challenged jury instruction was harmless beyond a reasonable doubt. (Id.).

### C.     Clearly Settled Supreme Court Law

A criminal defendant is entitled to a trial by jury and to have every element necessary to sustain his conviction proven by the state beyond a reasonable doubt.  United States Constitution, Amdts. V, VI, XIV.  Further, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Apprendi v. New Jersey, 530 U.S. 466, 490.

Even where constitutional error has occurred, however, reversal of a conviction is not automatically mandated.  Chapman v. California, 386 U.S. 18 (1967).  An otherwise valid

conviction should not be set aside if the constitutional error is found to be harmless. Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).

The Court has recognized that some constitutional errors "necessarily render a trial fundamentally unfair" and therefore require reversal without engaging in harmless error analysis. Rose v. Clark, 478 U.S. 570, 577, *citing* Chapman, 386 U.S. at 23, n. 8. These "structural" errors "affect the very framework within which the trial proceeds, rather than being simply errors in the trial process itself." Arizona v. Fulminante, 499 U.S. 279, 310 (1991). As such, they result in a trial that "cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." Rose, 478 U.S. at 577-578 (citation omitted).

These structural errors requiring immediate reversal of the conviction are the exception rather than the rule. United States v. Hasting, 461 U.S. at 509. The majority of errors at the trial level are subject to harmless error analysis. See Rose, 478 U.S. at 579 ("[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis."); see also Arizona v. Fulminante, 499 U.S. at 306-307 (collecting cases).

On direct review, trial error is analyzed under the standard articulated in Chapman v. California, 386 U.S. 18 (1967). In Chapman analysis, a constitutional error is harmless if the reviewing court is "able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24.

Should a federal court find the state court's harmless error analysis contrary to or an unreasonable application of federal law, it will then "revert to the independent harmless error analysis that...would apply had there been no state court holding." Inthavong v. Lamarque, 420 F.3d 1055, 1059 (9th Cir. 2005). At the habeas level constitutional error results in reversal "only if it 'had a substantial and injurious effect or influence in determining the...verdict." Brecht, 507 U.S. at 631, *quoting* Kotteakos v. United States, 328 U.S. at 776. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to relief based on trial error unless they can establish that it resulted in "actual prejudice." Id. at

637, *citing* United States v. Lane, 474 U.S. 438, 449 (1986).

### D.   Analysis of Petitioner's Claims

As noted above, the Fifth DCA held that the trial court had committed error in failing to include accomplice language in CALJIC No. 17.20. It found the error to be of constitutional magnitude, and went on to analyze whether the error was harmless under the standard articulated in Chapman  Under this standard, the Fifth DCA found the error to be harmless.

Petitioner argues that the Fifth DCA erred in applying the Chapman standard because the omission of an element of the offense in a jury instruction cannot be found harmless error. In support of this argument, Petitioner cites United States v. Hove, 52 F.3d 233 (9th Cir. 1995) which held that the omission of an essential element of the offense is "plain" error that "cannot be harmless." Hove, 52 F.3d at 236.

Petitioner's reliance on Hove is misplaced, as the Supreme Court has subsequently held that a jury instruction omitting an element of an offense is not structural error. See Neder v. United States, 527 U.S. 1, 9 (1999) ("An instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence."). Because it is not structural error, the Supreme Court holds that the omission of an element of the offense from a jury instruction "is subject to harmless error analysis." Id. at 15.

Under Apprendi, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Apprendi, 530 U.S. at 490. The Chapman standard is the appropriate standard under which to analyze Apprendi errors. See United States v. Garcia-Guizar, 234 F.3d 483, 488 (9th Cir. 2000).[1]

We find that the Fifth DCA's analysis of the error in question was not an objectively unreasonable application of Chapman. See Esparza, 540 U.S. at 17. Under California law, an

---

[1] Petitioner's reliance on U.S. v. Cotton, 535 U.S. 625 (2002), is misplaced. Cotton articulated a "plain error" standard on an Apprendi claim. However, at issue in Cotton was whether Apprendi claims are forfeited on federal direct appeal if not raised at trial. In such a context, a reviewing court will not consider a forfeited claim unless the error was "plain" and affected "substantial rights." This plain error exception is part of the federal appellate procedure and is not applicable here.

accomplice is a person criminally liable for the "identical offense" charged against the defendant by reason of aiding and abetting or conspiracy. Cal. Pen. Code § 1111. To be criminally liable as an accomplice, the individual must "act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of the offense." People v. Cook, 61 Cal.App.4th 1364, 1369 (1998) *quoting* People v. Beeman, 35 Cal.3d 547, 560 (1984).

The offense in question was assault with a deadly weapon, defined as "an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury...." Cal. Pen. Code § 245(a)(1). "Assault" is defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another." Cal. Pen. Code § 240.

The evidence at trial showed that Mr. Walker (the victim) confronted Petitioner after Petitioner made a rude sexual comment about Mr. Walker's wife. (RT 57, 59, 100, 184). The two men began arguing, and the argument escalated to the point that one or both of the men pushed the other. (RT 61, 108, 187). Petitioner then struck Mr. Walker in the face with a knife, inflicting a wound requiring thirty-five external stitches and fifteen internal stitches in severed muscle and tendons to repair. (RT 70, 177-78). Mr. Walker sustained scarring and major nerve damage. (RT 177, 210).

Nothing in the record suggests that the victim knew Petitioner's criminal purpose and encouraged or promoted Petitioner's act of slashing him in the face with a knife. As such, the jury could not possibly have applied the "other than an accomplice" exception to the special allegation. Thus the Fifth DCA's finding that omission of accomplice language in the jury instruction was harmless beyond a reasonable doubt is a reasonable application of the Chapman standard. Accordingly, the Petition should be denied.[2]

---

[2] Even had the Fifth DCA unreasonably applied the Chapman standard, We would nonetheless find Petitioner's claims to be without merit. Because no evidence supports a finding that the victim was an accomplice, the trial court's failure to include language regarding the accomplice exception in its instructions did not have a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637.

**RECOMMENDATION**

The Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED and the Clerk of the Court be DIRECTED to enter judgment.

These Findings and Recommendations are submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.

Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(c).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Y1st, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    March 21, 2008**                              /s/ John M. Dixon
                                                          UNITED STATES MAGISTRATE JUDGE